IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CASE NO. 2:25-cr-00590-BL |
| | ) |
| JOSHUA MICHAEL | ) |
| RICHARDSON | ) |

### **OPINION AND ORDER**

Before the court is the Defendant's MOTION for Review of Detention Order (Doc. 19) pursuant to 18 U.S.C. § 3145(b) filed on November 6, 2025. The Government filed a response in opposition (Doc. 27) on November 19, 2025. Based upon its independent review of the arguments of counsel, the record, and the relevant law, the court finds that the Defendant's motion for reversal of the magistrate's detention order is due to be denied without a hearing.

A person ordered detained by a magistrate judge may move the court with original jurisdiction over the offense to revoke or amend the order of detention. 18 U.S.C. § 3145(b). When a detainee moves to revoke a magistrate's pretrial detention order, "the district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary." *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988). Under 18 U.S.C. § 3142(e), the judicial officer has "substantial latitude in determining whether pretrial detention is appropriate." *Id.* at 487. The Eleventh Circuit has stated:

> "[I]f the district court, based solely on a careful review of the evidence adduced at the magistrate's detention hearing, agrees with the magistrate's recommendation that pretrial detention is necessary, yet finds that some of the magistrate's legal conclusions are incorrect or that certain of the magistrate's factual findings are not clearly supported, the court should so state in writing. In order to facilitate our review on appeal, the district court must prepare a written order in which it specifies those portions of the magistrate's pretrial detention order which it finds either incorrect or unsupported by the evidence of record. The district court may then explicitly adopt the magistrate's pretrial detention order."

*United States v. King*, 849 F.2d 485, 491 (11th Cir. 1988).

A finding that a defendant poses a flight risk or is a danger to another person or the community requires his or her detention pending trial. *Id.* at 488. Factors that bear on whether a defendant should be released or detained pending trial include: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence," 18 U.S.C. § 3142(g)(1); (2) "the weight of the evidence against" the defendant, § 3142(g)(2); (3) the defendant's "history and characteristics," such as his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," § 3142(g)(3); and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," § 3142(g)(4). The government bears the burden of showing by a preponderance of the evidence that the defendant is a flight

risk or by clear and convincing evidence that the defendant poses a danger to the community. *See United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985) (explaining the government's burden of proof under the Bail Reform Act on a motion for pretrial detention); *see also King*, 849 F.2d at 488–89 (accord).

The court agrees with the magistrate's finding that the Government has met its burden of proving, by clear and convincing evidence, that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community" if Richardson is released pending trial; however, the court does not agree with all of the reasons cited in the magistrate's detention order. 18 U.S.C. § 3142(e)(1); *See King*, 849 F.2d at 491.

Richardson is charged with one count of stalking, a violation of 18 U.S.C. § 2261A). The indictment states that Richardson

> traveled in interstate commerce from Chilton County, Alabama to Orange County, California with the intent to kill, injure, or harass another person, namely the members of the community of S.M.A., and in the course of and as a result of such travel placed that person in reasonable fear of the death of, and serious bodily injury to, members of that community, and caused or would be reasonably expected to cause substantial emotional distress to members of that community, in violation of Title 18, United States Code, Section 2261A.

(Doc. 12). The following factual background is taken from the police reports attached to Richardson's motion (Doc. 19) and the evidence presented to the magistrate at the detention hearing: On August 19, 2025, St. Michael's Abbey in California received an email from Richardson, in which Richardson inquired as to

3

whether he could stay at the campground at the church during his upcoming visit to L.A. He referred to himself as the "angel of death" and "the rider of the pale horse" whose purpose was "to do the Lord's reaping before his harvest," and said, "it is now harvest season and I will be making my way to LA really soon." Richardson signed the email "Sincerely, Death." Seven days later, on August 26, 2025, Richardson arrived at St. Michael's Abbey and attended a service. Afterward, he followed a clergyman into a private area of the church. He identified himself to the clergyman as "Joshua Michael Jericho" and stated, among other things, that it was "time to harvest" and that he had ridden on his "white pale horse from Alabama" (referring to his white truck) in order to "separate the wheat from the weeds." (Doc. 19-1). He expressed to the clergyman that he wished to make an appointment with the person in charge of the church to test its loyalty to "the order of Michael." (Doc. 19-2). After being asked to leave, Richardson left the church peaceably. As a result of his visit, St. Michael's Abbey hired 24-hour security and contacted the police.

Richardson was arrested on August 29, 2025, for a violation of California Penal Code § 422, Criminal Threats, as well as for the unlawful possession of certain weapons that were discovered in his vehicle. The police discovered the following items in Richardson's vehicle: six thirty-round high-capacity rifle magazines, body armor, two weapon-mounted light and lasers, two brass knuckles, a K-Bar knife, a dagger, a sheathed sword, four handheld radios with batteries and earpieces, tactical

4

flashlights, an operable stun gun, duct tape, paracord rope, miscellaneous medical equipment, miscellaneous tactical gear, a documented entitled "Articles of War," a black military-style jumpsuit, and a calendar with "End Reeping" written on September 27, 2025. (Doc. 19-2 and Doc. 19-3).

Richardson told the arresting officers that he had traveled from Alabama to the church because he was "insulted" that the church had failed to respond to his email as the church is "named after him." However, he also stated that he had come to California to attempt to contact movie directors Tim Burton and Mel Gibson because he had created a movie about the end of the world and wanted their help to "get the word out." Richardson further stated that, at the end of the world, which he anticipated would take place before November, 2025, he would "be the first to die, and his soul would leave his body and be taken over by Hadi, who would bring death to many people." (Doc. 19-2).

After a hearing, a magistrate judge for the United States District Court for the Central District of California entered an order of detention pending trial on the bases that: (1) Richardson had "inadequate bail resources"; (2) the offense charged was a "crime of violence"; (3) Richardson's release posed a serious danger to any person or the community; and (4) Richardson possessed "various weapons and tactical gear." Richardson's motion for review challenges the detention order on all four points.

5

**I. Bail Resources**

Richardson argues that the magistrate erred in citing "inadequate bail resources" as a basis for detention because, at the hearing, Richardson's counsel stated that Richardson's father was willing to sign a $10,000 surety bond. Indeed, the Government asserted at the hearing that Richardson had "[n]o bail resources," but defense counsel responded that Richardson's father was willing to sign a $10,000 surety bond. Therefore, the court does not consider "inadequate bail resources" to be a valid basis for pretrial detention in this case.

**II. Crime of Violence**

Richardson argues that the magistrate erred in considering his charge to be a crime of violence. 18 U.S.C. § 3156(a)(4) defines "crime of violence" as:

> (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or
>
> (C) any felony under chapter 77, 109A, 110, or 117 [concerning trafficking and sex crimes].

Subsection (C) does not apply in this case. Richardson argues that subsection (B), the residual clause, is unconstitutional under *Johnson v. United States*, 576 U.S. 591 (2015). In *Johnson*, the Supreme Court held void for vagueness a statute that defined "violent crimes" (for purposes of sentence enhancement) as any felony involving

6

"conduct that presents a serious potential risk of physical injury to another." The Court in *Johnson* reasoned as follows:

> Deciding whether the residual clause covers a crime . . . requires a court to picture the kind of conduct that the crime involves in "the ordinary case," and to judge whether that abstraction presents a serious potential risk of physical injury. . . . The court's task goes beyond deciding whether creation of risk is an element of the crime. That is so because, unlike the part of the definition of a violent felony that asks whether the crime "has as an element the use ... of physical force," the residual clause asks whether the crime "involves conduct" that presents too much risk of physical injury.

*Johnson v. United States*, 576 U.S. 591, 596 (2015).

The court agrees with Richardson as to subsection (B). Like in *Johnson*, to apply § 3156(a)(4)(B) defining a crime of violence, the court would have to ask whether the crime of "interstate stalking," in the abstract, "by its nature involves a substantial risk that physical force will be used against someone in the course of committing the offense." That clause therefore is likely void for vagueness. The question of whether an offense is a "crime of violence" should be a categorical question, not a case-specific fact question. *See United States v. Johnson*, 399 F.3d 1297, 1301 (11th Cir. 2005) (stating that determining whether an offense qualifies as a "crime of violence" for purposes of § 3156(a)(4) is a "categorical question, and thus is not dependent upon the specific facts of the case").

Looking only to part (A) of the definition, the elements clause, the court must ask whether "the use, attempted use, or threatened use of physical force against the

person or property of another" is an actual element of the crime charged. 18 U.S.C. § 2261A ("Stalking") provides:

> Whoever—
>
> > (1) travels in interstate or foreign commerce or is present within the special maritime and territorial jurisdiction of the United States, or enters or leaves Indian country, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel or presence engages in conduct that—
> >
> > > (A) places that person in reasonable fear of the death of, or serious bodily injury to—
> > >
> > > > (i) that person;
> > > >
> > > > (ii) an immediate family member . . . of that person;
> > > >
> > > > (iii) a spouse or intimate partner of that person; or
> > > >
> > > > (iv) the pet, service animal, emotional support animal, or horse of that person; or
> > >
> > > (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of subparagraph (A); or
> >
> > (2) with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—

> (A) places that person in reasonable fear of the death of or serious bodily injury to a person, a pet, a service animal, an emotional support animal, or a horse described in clause (i), (ii), (iii), or (iv) of paragraph (1)(A); or
>
> (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A),

shall be punished.

Applying a nearly identical definition of "crime of violence" as that provided in 18 U.S.C. § 3156(a)(4), the United States District Court for the Southern District of Florida recently found that stalking, as defined in § 2261A(2)(A) specifically, constituted a crime of violence. *See United States v. Johnson*, No. 24-CR-20110, 2025 WL 1520055 (S.D. Fla. May 7, 2025) (finding that stalking constituted a crime of violence under 18 U.S.C. § 924(c) such that it could serve as a predicate crime to the defendant's charge of "brandishing a firearm in furtherance of a crime of violence"), report and recommendation adopted, No. 24-20110-CR, 2025 WL 1517219 (S.D. Fla. May 28, 2025). Johnson was charged with violating § 2261A(2)(A), and the court relied heavily on the fact that the elements Johnson was charged with included prong (A): causing a fear of death or serious bodily injury. The court reasoned that "[i]t is impossible to conceptualize an instance where an individual engages in a 'course of conduct' that puts someone in 'reasonable fear of the death of or serious bodily injury' without engaging in conduct that, at minimum,

9

threatens the use of physical force to a person." *Id.* at *10. The court noted that "[a] course of conduct causing a victim to reasonably fear death or serious bodily injury is, in common parlance, a threat." *Id.* at *9.

The court in *Johnson* relied on *Somers v. United States*, in which the Eleventh Circuit found, with respect to an assault statute, that "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent," met the definition of a "violent felony" because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 66 F.4th 890, 894–96 (11th Cir. 2023). The court further reasoned that both the assault statute at issue in *Somers* and § 2261A(2)(A) "demand[] a high degree of specific intent (the 'intent to kill, injure, harass, [and] intimidate') and pair[] that with conduct that places the victim in reasonable fear of death or serious bodily injury." *Id.* at *10.

This court agrees with the court's reasoning in *Johnson*. Johnson was charged with violating subsection § 2261A(2)(A); Richardson is charged with violating subsections § 2261A(1)(A) and (B). Specifically, Richardson is charged with committing conduct with the intent to kill, injure, or harass another person, and, in the course of and as a result of that conduct, "plac[ing] that person in reasonable fear of the death of, and serious bodily injury to, members of that community." (Doc.

10

12). That specific combination of elements inherently requires proof of "the use, attempted use, or threatened use" of physical force. *See Johnson*, 2025 WL 1520055 at *9–10 ("[I]t is impossible to conceptualize an instance where an individual engages in a 'course of conduct' that puts someone in 'reasonable fear of the death of or serious bodily injury' without engaging in conduct that, at minimum, threatens the use of physical force to a person."); *see also Somers*, 66 F.4th at 894–96. Therefore, the first factor provided in § 3142(g)(1) ("the nature and circumstances of the offense charged, including whether the offense is a crime of violence") weighs in favor of pretrial detention.

### III. Serious Danger & Richardson's Possession of Weapons and Tactical Gear

The court finds that Richardson's pretrial detention is appropriate based on two other reasons cited in the magistrate detention order: Richardson possessed "various weapons and tactical gear" and his release poses a serious danger to the community. As the Government points out in its response, whether the crime constitutes a "crime of violence" is merely one of the several factors bearing on whether a defendant should be released or detained pending trial. *See* § 3142(g).

With respect to whether he poses a serious danger to any person or the community, Richardson points out that he left the church without incident when he was asked to do so. He also argues that the magistrate could have ensured the safety of that community by crafting conditions of release such as requiring Richardson to

11

stay in Alabama, directing him to refrain from further contact with the church, and requiring him to wear an ankle monitor to ensure that he stays within the Middle District of Alabama. However, those conditions are aimed only at protecting the residents of California; they would not ensure the safety of the community in which Richardson resides (in Alabama). The court must determine whether the evidence shows that any conditions could have reasonably assured Richardson's appearance and "the safety of *any* other person and the community." 18 U.S.C.A. § 3142 (emphasis added). The circumstances of this case do not suggest that Richardson only poses a threat to a community California. Although he targeted St. Michael's Church in this instance, the evidence in the record reflects that Richardson holds concerning beliefs in general, which informed his conduct towards St. Michael's Abbey. For example, apart from his correspondence with the church, in his writings in jail in California (which the Government attached to its response in opposition, Doc. 27), Richardson referred to himself as the reincarnation of Hitler and wrote that the "jews" must be "stopped at any cost"; "I'll make you wish the holocaust was true"; and "[t]here won't be any satanic jews, when I'm through with you." (Doc. 27).

Richardson further argues that the magistrate erred in relying on the fact that he possessed "various weapons and tactical gear" to support pretrial detention because Richardson was not wearing the tactical gear when he arrived at the church

12

and because he did not display any of the weapons at any point. According to Richardson, the weapons and tactical gear found in his car were merely intended to be props in a movie he planned to create in California. Richardson states that even if the magistrate correctly considered his possession of the weapons in relation to its pretrial detention decision, the court could have ensured the safety of the community by simply prohibiting Richardson from possessing any weapons while on pretrial release.

According to the arresting officer's report, Richardson stated the following with respect to the items discovered in his vehicle:

> [Richardson] confirmed he had a bulletproof vest but hoped he didn't need it. He also said he had motorcycle gear, knives, a dagger, brass knuckles because he has very fragile hands, walkie-talkies in case he needed to assemble a team, and empty gun magazines. [Richardson] said he had the gun magazines attached to the bulletproof vest to add extra protection. However, he did not own any guns or ammunition.
>
> [Richardson] stated he did not know that possessing brass knuckles, high-capacity rifle magazines, . . . or a dagger was illegal in California. [Richardson] said the right to keep and bear arms cannot be infringed, and he's allowed any sort of weapon.

In light of Richardson's statement that he traveled to the church on the basis that he felt insulted, and because Richardson signed his email to the church "Sincerely, Death," it is reasonable to consider the weapons and tactical gear Richardson had in his car to be related to his visit to the church and, specifically, as evidence of his intent for the visit. Moreover, considering that some of these items

13

were illegal to possess, and given his statements to the police about his belief that he can possess any weapon, the court is not reasonably assured that directing Richardson to refrain from possessing such items during his pretrial release would be effective.

At the detention hearing, Richardson requested that the court order his release pending trial, subject to the condition that he wear an ankle monitor, refrain from further communication with St. Michael's church, and report promptly to this Court in the Middle District of Alabama. In his motion, Richardson argues that the magistrate could have required him to: (1) refrain from possessing weapons; (2) regularly report to the court or to pretrial services; (3) resume his previous employment; and (4) submit to electronic monitoring. However, none of those conditions would prevent Richardson from obtaining more weapons and carrying out the plans expressed in his writings or the "reaping" that was scheduled in his calendar, and such actions, once taken, could not be mediated or undone by revoking his pretrial release.

In summary, the caliber of weaponry that Richardson possessed during his visit, his writings suggesting his concerning beliefs and intentions for his visit, and the fact that he traveled across several states due to feeling insulted, constitute clear and convincing evidence that Richardson poses a danger to that community in California, as well his community in Alabama. *See* § 3142(g) (directing courts to

consider "the nature and circumstances of the offense charged," "the weight of the evidence against" the defendant, the defendant's "history and characteristics," such as his or her "character, physical and mental condition," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release" in determining whether pretrial detention is necessary).

After an independent review of the record (including the evidence presented to the magistrate at the detention hearing, the arguments of counsel, and the materials attached to the briefs in support of and in opposition to the present motion), in conjunction with the factors provided in 18 U.S.C. § 3142(g), the court finds that no condition or combination of conditions of pretrial release will reasonably assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1). Accordingly, Richardson's motion for reversal of the magistrate's detention order is due to be denied.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant's MOTION for Review of Detention Order (Doc. 19) under 18 U.S.C. § 3145(b) seeking reversal of the detention order is **DENIED**. Excepting the portions disclaimed above, the magistrate's pretrial detention order (CM/ECF for U.S. Dist. Ct. for C.D. Cali., case no. 25-mj-797, Doc. 8) is otherwise hereby **ADOPTED** and **AFFIRMED**. *See King*, 849 F.2d at 491. The Defendant shall remain in the custody of the Attorney General for confinement without bond pending a final disposition in this case.

**DONE** and **ORDERED** on this the 10th day of December, 2025.

_____
BILL LEWIS
UNITED STATES DISTRICT JUDGE